**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| | | |
|---|---|---|
| **CRAIG BANKSTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.** |
| | ) | 3:15-cv-207-TCB-RGV |
| **v.** | ) | |
| | ) | |
| **SEWON AMERICA, INC. AND,** | ) | **JURY TRIAL DEMANDED** |
| **CHRIS ARMSTRONG,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

COMES NOW, Plaintiff, Craig Bankston (hereinafter "Plaintiff") by and through his undersigned counsel of record and sets forth this Complaint for damages asserting claims of violations of the Family Medical Leave Act, 29 U.S.C. Section 2601 et seq. (the "FMLA") the Americans with Disabilities Act ("ADA") and the Employee Retirement Security Act as set forth below:

### <u>JURISDICTION AND VENUE</u>

1.

This action is for interference and retaliation against Plaintiff's rights arising under the protections provided by the FMLA and violations of the ADA and ERISA. Plaintiff seeks declaratory and injunctive relief, back pay, front pay, liquidated

damages, a permanent injunction against future violations, reinstatement or front-pay in lieu of reinstatement, statutory damages, punitive damages, and attorney's fees and costs.

2.

This Court has jurisdiction over the present matter pursuant to 29 U.S.C. § 216(b).

3.

Venue is appropriate in this Court as upon information and belief the events complained of herein occurred within the geographic boundaries of the U.S. District Court for the Northern District of Georgia and upon information and belief all parties to this action reside within the geographic boundaries of the United States District Court for the Northern District of Georgia.  Venue is proper pursuant to 28 U.S.C. Section 1391 (b) and (c).

## **PARTIES**

4.

Plaintiff is a citizen of the United States.  Plaintiff is a former employee of Sewon America, Inc. (hereinafter "Sewon" or "Defendant Employer").

5.

This Court has personal jurisdiction over Defendant Employer.

6.

Defendant Employer may be served through its registered agent, Junho Jung, at 1000 Sewon Boulevard., LaGrange, Georgia  30241, if service of process is not waived.

7.

This Court has personal Jurisdiction over Chris Armstrong (hereinafter "Defendant Armstong").

8.

Upon information and belief, Defendant Armstrong is a resident of the state of Georgia.

9.

Upon information and belief, Defendant Armstrong may be served at 1000 Sewon Boulevard., LaGrange, Georgia  30241, if service of process is not waived.

**STATEMENT OF FACTS**

10.

Defendant Employer is a covered employer within the meaning of the FMLA.

11.

During all time relevant to this law suit, Defendant Employer employed more than fifty (50) employees within seventy-five (75) miles for each working day during each of twenty (20) or more calendar weeks in the 2013 and 2014 calendar years.

12.

At all times relevant to this lawsuit, Plaintiff was an eligible employee pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. as he was employed with Defendant for more than 12 months, and had worked 1,250 hours for Defendant within the 12 months prior to requesting FMLA leave.

13.

Plaintiff began working for Defendant Employer as an operator trainee making $10.00 per hour in May, 2010.

14.

Approximately 6 months later, Plaintiff was promoted to an operator position and operated a sheet metal stamping press to make automotive parts.

15.

Plaintiff was qualified for the position of sheet metal press operator.

16.

Plaintiff regularly received pay raises based on his performance with Defendant Employer over the next four years.

17.

On or around May 30, 2014, almost at the end of his shift, Plaintiff was attempting to move a heavy stack of sheet metal during his shift.

18.

As Plaintiff exerted force against the stack of sheet metal, Plaintiff felt a ripping sensation in his abdomen; Plaintiff went to the bathroom, and was able to observe the hernia.

19.

Plaintiff's shift ended while Plaintiff was in the bathroom.

20.

After Plaintiff's shift, he went to the hospital; Plaintiff was diagnosed with a hernia and was referred to a surgeon.

21.

Beginning on or around May 30, 2014, Plaintiff was incapacitated due to his hernia and was unable to perform the essential functions of his job.

22.

Plaintiff attempted to contact his supervisor on or around June 1, 2014, Defendant Employer being shut down for a week for retooling prevented Plaintiff from being able to contact his supervisor during the shut-down.

23.

After leaving the hospital, Plaintiff followed up with a licensed health care professional - the surgeon he had been referred to.

24.

After meeting with the second health care professional, Plaintiff was told that he would need to have surgery to repair the hernia, and that Plaintiff would be unable to work for approximately 8 weeks.

25.

Plaintiff asked for a letter saying that Plaintiff would need at least 8 weeks off from work; the surgeon's nurse told Plaintiff that if Plaintiff asked for 8 or more weeks of time off, Defendant Employer would likely fire him, and that they should only ask for 4 weeks initially, and then ask for additional time.

26.

Plaintiff met with his supervisor the following week, on or around June 7, 2014, and explained that Plaintiff had a hernia, that surgery had been scheduled for

June 12, 2014, and that Plaintiff was unable to do any lifting or any activity that required physical exertion and was not able to work, and Plaintiff asked for FMLA leave.

27.

Plaintiff's supervisor told Plaintiff that it was not a problem for Plaintiff to be out, and that Plaintiff should talk to someone in the front office about getting a medical leave since Plaintiff was going to need surgery.

28.

Plaintiff's supervisor wished Plaintiff good luck with the surgery.

29.

Plaintiff then went to the front office and was directed to talk to the office manger: Maria.  Maria told Plaintiff that he would need to fill out some paperwork and that it would be ok to take time off from work.

30.

On or around June 16, 2014, Plaintiff faxed back his medical certification for FMLA leave from June 7, 2014, through June 29, 2014.  Plaintiff received no response from Defendant Employer or Maria, but the staff at Plaintiff's health care provider's office told Plaintiff that his leave had been approved.

31.

On or around June 29, 2014, Plaintiff met with Maria again because Plaintiff was still not able to return to work.  Plaintiff explained to Maria that he was still feeling extremely weak, was having frequent, uncontrolled diarrhea, was experiencing swelling in his lower abdomen anytime he lifted items, and was still having pains in his stomach, and was suffering from frequent abdominal contraction, and that Plaintiff would be unable to perform the necessary functions of his job.

32.

Maria gave Plaintiff a second set of FMLA forms to fill out and told Plaintiff that he could request leave until August 12, 2014.

33.

Plaintiff asked Maria what Plaintiff should do if he was unable to return to work on August 12, 2014.

34.

Maria told Plaintiff that he would have to use his vacation time if he was not sure he would be able to return to work.

35.

Around mid-July, 2014, filled out a vacation request form for August 12 – 17, 2014, and took it to his supervisor, and explained that Plaintiff did not feel like he

would be able to return to work on August 12, 2014, based on his inability to lift items and the ongoing abdominal swelling that Plaintiff was still having, Plaintiff was still suffering from swelling in his scrotum when the tried to lift objects, and the highly physical nature of Plaintiff's job which required significant physical exertion.

36.

Plaintiff's supervisor, Charles Manard, told Plaintiff that Manard could tell Plaintiff was not well because Plaintiff had lost so much weight.

37.

Plaintiff also met with his department manager, Darnell, and explained that he needed more time off work, had been suffering with uncontrollable diarrhea which caused Plaintiff to lose 40 pounds, was unable to eat, was having swelling in his lower abdomen and in his scrotum, which became worse anytime Plaintiff tried to lift things, and did not think that Plaintiff would be able to return to work on August 12, 2014.

38.

The department manager, Darnell, said it would be no problem for Plaintiff to have an additional week off, that Darnell understood how the surgery had affected Plaintiff, and that Plaintiff needed the time to heal.

39.

Plaintiff turned in his form to request an additional week off after around mid-July, 2014, as Maria had instructed him.

40.

Plaintiff's supervisor told Plaintiff that it would be no problem for Plaintiff to be out another week, that Plaintiff needed to be in good shape when Plaintiff returned because Plaintiff's job was very demanding, physically, and that the supervisor hoped Plaintiff was feeling better soon.

41.

Around August 5, 2014, Plaintiff contacted Maria and his supervisor again. Plaintiff explained that he was still having pain from his surgery, and was still having on-going swelling when he tried to pick objects up, was still having spontaneous abdominal contractions, swelling in Plaintiff's lower abdomen and scrotum, was unable to lift items without making the swelling in his abdomen and scrotum worse, and would need the additional week off that Plaintiff had requested.

42.

Plaintiff was told that his request for and additional week off was approved, and that he could return to work on August 18, 2014.

43.

Plaintiff returned to work on August 18, 2014, and worked an eight-hour shift.

44.

Plaintiff returned to work again on August 19, 2014, and was directed by Defendant Armstrong to go to the front office.

45.

Once in the front office, Defendant Armstrong and Maria began to berate Plaintiff for taking too much time off, and told Plaintiff that the time he had been out was a lot of work for everyone else and that Plaintiff had been out more than 8 weeks.

46.

Maria also told Plaintiff that Defendant had not been hurt, that Plaintiff had been right in front of a camera and that Plaintiff had been lying about having an injury.

47.

Plaintiff explained that he had been suffering with abdominal swelling, abdominal contractions, was having intermittent swelling in his scrotum, and was unable to lift objects, and that since the surgery Plaintiff had been unable to eat a

regular diet and had suffered with uncontrollable diarrhea, and had needed the additional time to convalesce.

48.

Defendant Armstrong told Plaintiff that Defendant Armstrong and Maria would need to talk to Ken Horton, Defendant Employer's human resource person.

49.

A short time later, Plaintiff was told that he would be sent home without pay indefinitely and that he should not return to work until he was contacted by Defendant Employer.

50.

Plaintiff's employment was terminated on or around August 19, 2014.  The only reason given to Plaintiff for the termination of his employment was that he had missed too much work.

51.

The true reason that Plaintiff's employment was terminated was to interfere with Plaintiff's FMLA rights and to retaliate against Plaintiff for his use of FMLA leave.

## <u>FIRST CAUSE OF ACTION: INTERFERENCE WITH THE FMLA, 29 U.S.C. § 2601 ET SEQ.</u>

52.

Plaintiff incorporates by reference paragraphs 1 through 49 of this Complaint as if fully set forth verbatim herein.

53.

Plaintiff had been employed with Defendant Employer for more than twelve (12) months and for at least 1,250 hours of service during the previous twelve (12) month period, qualifying him for FMLA leave in 2014.

54.

At all times relevant to this action, Defendant Employer had more than 50 employees in twenty (20) or more workweeks in 2012 -2013, and was engaged in commerce or was part of an industry affecting commerce, making it an "eligible employer" as defined by the FMLA, 29 U.S.C. § 2611(40)(A).

55.

Plaintiff had a serious health condition as defined by the FMLA.

56.

This serious health condition rendered Plaintiff unable to perform the functions of his position with Defendant Employer which lasted more than three consecutive days.

57.

Plaintiff's serious health condition required continuing treatment by a health care professional, and required two or more visits to a health care provider.

58.

Plaintiff had not exhausted his FMLA leave limit in 2014.

59.

Plaintiff timely notified Defendant Employer of his serious medical condition and need for FMLA leave.

60.

Defendant Employer and Defendant Armstrong knew that Plaintiff was qualified for leave under the FMLA as of June 1, 2014, but Defendant Employer, through its agents, told Plaintiff that Plaintiff was only entitled to 8 weeks of FMLA leave.

61.

Plaintiff exercised his rights under the FMLA in taking time off for treatment of his serious medical condition, and requested 9 weeks of FMLA leave for his FMLA-covered serious health condition.

62.

Defendant Employer and Defendant Armstrong interfered with Plaintiff's use of his FMLA leave by telling Plaintiff that he could only take 8 weeks of FMLA leave and directing Plaintiff that he could only take the additional week of leave if he used his vacation time.

63.

As a result of Plaintiff's use of FMLA leave and requests for FMLA leave, Defendants Employer and Defendant Armstrong unlawfully terminated Plaintiff's employment to prevent him from taking FMLA leave, to interfere with his rights to reinstatement, and thus interfering with Plaintiff's right to FMLA leave.

**SECOND CAUSE OF ACTION: RETALIATION UNDER THE FMLA**

64.

Plaintiff incorporates by reference paragraphs 1 through 61 of this Complaint as if fully set forth verbatim herein.

65.

Plaintiff engaged in or in good faith believed that he was engaging in statutorily protected activity when he requested FMLA leave for his serious health condition.

66.

Defendants took an adverse action against Plaintiff by telling Plaintiff that he could only take 8 weeks of FMLA leave and terminating Plaintiff's employment after Plaintiff requested an additional week of FMLA leave and attempted to exercise his rights under the FMLA.

67.

Defendants terminated Plaintiff's employment because he engaged in protected activity by requesting and using FMLA leave.

68.

Defendants' actions complained of herein have caused damage to Plaintiff, including but not limited to lost wages, lost benefits, financial liability for medical procedures which would have been covered by Defendant Employer's health insurance program, and other damages.

## THIRD CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

69.

Plaintiff incorporates by reference paragraphs 1 through 66 of this Complaint as if fully set forth verbatim herein.

70.

During the last nine weeks of Plaintiff's employment, Plaintiff had a physical impairment which substantially limited multiple life activities such as caring for himself, working, walking, and performing manual tasks.

71.

Plaintiff, however, was able to perform the essential functions of his job with a reasonable accommodation: an additional week of leave for Plaintiff to recover from hernia surgery.

72.

Plaintiff requested a reasonable accommodation for his disability: an additional week of leave.

73.

Defendant Employer failed to provide Plaintiff with a reasonable accommodation for Plaintiff's disability and unlawfully discriminated against Plaintiff because of his disability.

74.

Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission for illegal discrimination based on disability on February 23, 2014.

## FOURTH CAUSE OF ACTION: VIOLATION OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT

### 75.

Plaintiff incorporates by reference paragraphs 1 through 71 of this Complaint as if fully set forth verbatim herein.

### 76.

Defendant Employer provided an employee welfare benefit plan to its employees during Plaintiff's employment (hereinafter the "Plan").

### 77.

The employee benefit and the Plan at issue are covered by the Employee Retirement Income Security Act, 29 U.S.C. Section 1132 *et seq* ("ERISA").

### 78.

Plaintiff engaged in protected activity in seeking and claiming benefits offered under the Plan while employed by Defendant Employer.

### 79.

Defendants retaliated against Plaintiff for seeking benefits under the Plan, in violation of ERISA.

80.

Defendants terminated Plaintiff's employment to retaliate against Plaintiff for seeking benefits under the Plan, in violation of ERISA, and to prevent Plaintiff from obtaining further benefits under the Plan, also in violation of ERISA.

81.

As a result of the conduct of Defendant Employer complained of herein, Plaintiff suffered damages in the form of lost wages and benefits, significantly diminished employment opportunities, and emotional distress.

**WHEREFORE**, Plaintiff prays for that this Court:

(a) cause process to issue;

(b) take jurisdiction of this matter;

(c) issue a judgment declaring that Plaintiff was covered by the provisions of the FMLA and ADA and that Defendants failed to comply with the requirements of the FMLA and ADA;

(d) cause a trial by jury of all issues be had;

(e) that pursuant to FMLA, ADA and/or ERISA all damages for lost wages, benefits, and other compensation, plus interest thereon at the statutory rate be awarded Plaintiff;

(f) that pursuant to FMLA, ADA, and/or ERISA, additional liquidated damages and/ or punitive damages be awarded to Plaintiff;

(g) that pursuant to FMLA and/or ERISA, equitable relief in the form of reinstatement or front pay, as the Court deems appropriate be awarded Plaintiff;

(h) that pursuant to the FMLA and/or ERISA, attorney's fees, expert witness fees, and costs of this action be awarded Plaintiff;

(i) grant a judgment against Defendants for any and all general, special, and where applicable, punitive damages as allowed under each and every count and cause of action contained in this Complaint; and

(j) for any and all other and further relief as this Court may deem just and equitable under the circumstances.

Respectfully submitted this 23rd day of December, 2015.

/s/ J. Stephen Mixon
J. Stephen Mixon
Georgia Bar No. 514050
steve@mixon-law.com

/s/ Alex R. Roberson
Alex R. Roberson
Georgia Bar No. 558117
alex@mixon-law.com

MILLAR & MIXON, LLC
1691 Phoenix Boulevard
Suite 150

Atlanta, Georgia  30349
Phone: (770) 955-0100
Fax: (678) 999-5039